1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

GOLDSTEIN,

              Plaintiff,

    v.

WEEKS STREET, LLC,

              Defendant.

Case No.  16-cv-00856-BLF
           16-cv-01066-BLF

**ORDER AFFIRMING ORDERS OF THE BANKRUPTCY COURT**

This matter is before this District Court on appeal, pursuant to 28 U.S.C. § 158(a), from the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). Appellants Samuel Goldstein, William Kennedy, Chacko Neroth, Pravin Patel, Suraj Puri, and Khatera Said ("Appellants") appeal two orders from the Bankruptcy Court.  In Appellate Case No. 16-cv-01066, the Appellants appeal from the order in which the Bankruptcy Court denied a motion for reconsideration of an order converting a Chapter 11 estate to Chapter 7.  *See* Order Denying Reconsideration, ECF 7-93; Order Granting Motion to Convert Case to Chapter 7 ("Conversion Order"), ECF 4-53.[1]  Appellee First National Bank of Northern California ("FNB") filed a response brief, to which Weeks Street, LLC and Nexgen Builders, Inc ("Nexgen") joined. ECF 25, 33, 34, No. 16-01066.  Appellee FNB has also moved to dismiss certain Appellants from appeal and has filed a motion seeking clarifications relating to items Appellants submitted for their record on appeal in Appellate Case No. 16-cv-01066.

---

[1] Unless otherwise noted, docket numbers ("ECF") refer to documents filed in Case No. 16-00856 (N.D. Cal. filed Feb. 19, 2016).

1    In Appellate Case No. 16-cv-00856, Appellants appeal from an order in which the

2    Bankruptcy Court authorized the Chapter 7 Trustee to enter into settlements with FNB and

3    Nexgen regarding a state court action.  *See* Order Granting Motions to Authorize Settlements with

4    FNB and Nexgen. ("Settlement Order"), ECF 7-94.  Appellees Fred Hjelmeset, FNB, and Nexgen

5    separately filed their response briefs.  ECF 27, 31, 35.

6    Because all the issues relating to the two appeals and FNB's motions stem from the same

7    Bankruptcy Court case and concern the same set of facts, this Court will address them together in

8    this Order.

9    **I.    BACKGROUND**

10    Weeks Street, LLC ("Debtor"), whose sole member is William Kennedy, contracted with

11    Nexgen, Inc. ("Nexgen") to develop residential properties in East Palo Alto, California in two

12    phases.  Settlement Order 2; Nexgen Phase I Contract, ECF 8-74; Hjelmeset's Excerpt of Record

13    ("ER") 13, 37, ECF 28.  A number of units were completed during phase I in 2006 and sold.  ER

14    37, 65.  To finance phase II of the construction, Debtor entered into several agreements with FNB

15    in March 2006, including a Construction Loan Agreement and a Disbursement Schedule.  *Id.*;

16    Construction Loan Agreement, ECF 8-44, et seq.; Disbursement Schedule, ECF 8-52.  FNB's loan

17    was secured by a first priority deed of trust encumbering Debtor's properties to be developed in

18    East Palo Alto, with a promissory note in favor of FNB in the original principal amount of

19    $6,959,375.  Promissory Note, ECF 12-2.  In addition to FNB's deed of trust, the Debtor's

20    properties were also encumbered by junior liens in favor of Nexgen, Pravin Patel, and Suraj Puri.

21    ER 19, 65.

22    Toward the end of phase II, Debtor started to have a series of disputes with Nexgen

23    regarding payments sought by Nexgen and Nexgen's performance under the contract.  Nexgen

24    Phase II Contract, ECF 8-75, et seq; ER 66-67.  For example, in May 2007, Debtor determined

25    that Nexgen was only entitled to $305,946 based on Nexgen's twelfth invoice requesting $664,727

26    ("Draw No. 12").  *Id.*  FNB asserts that it was ready to approve the full amount and deliver the

27    funds to Debtor to pay Nexgen.  *Id.* at 31, 60.  However, according to FNB, since Debtor did not

28    approve the full amount, Nexgen did not receive any payments for Draw No. 12.  *Id.*  Nexgen then

2

1    recorded mechanic's liens on eight of the houses in development.  *Id.* at 31, 38, 60, 66; ECF 20-

2    13.

3         Nexgen's mechanic's liens and liens from subcontractors stopped four houses in escrow

4    from closing and prevented any others from selling.  Ex. A to Objection to Nexgen's Claim 2,

5    ECF 20-20; ER 31.  Although FNB claims that it asked Debtor to remove the mechanic's liens, the

6    liens remained.  FNB's Summ. J. Mot., Tab 14, Ex. 2, pp. 6, 13, ECF 26, No. 16-01066.  In June

7    2007, FNB sent a letter informing Debtor of its failure to make interest payments on the loan.  *Id.*

8    at 7; ER 31.  Soon thereafter, FNB recorded a notice of default against the properties and sought to

9    foreclose.  ER 31.  Around the same time in June 2007, Debtor filed a complaint in San Mateo

10   County Superior Court in an attempt to expunge or allocate Nexgen's lien.  *Id.*; ECF 20-13.  In

11   August 2007, the San Mateo County Superior Court ordered allocation of the lien equally among

12   the unsold properties.  ER 31; ECF 20-13.  Nexgen then commenced litigation to enforce the lien.

13   ER 31.

14        **A.    Chapter 11 Phase**

15        Because Debtor, FNB, and Nexgen were unsuccessful in resolving their disputes, Debtor

16   commenced a Chapter 11 case in December 2007 to forestall FNB's foreclosure sale.  *Id.* at 31-32.

17   During the Chapter 11 phase of this case, between April 2008 and August 2009, Debtor completed

18   the phase II home construction and sold all of the completed homes, paying down a material

19   portion of FNB's promissory note.  ER 32; Settlement Order 3.  The only real property remaining

20   in the estate consisted of four undeveloped lots ("Lots"), subject to the senior lien of FNB.  *Id.* at

21   3.

22        In November 2010, Debtor filed a complaint against FNB and Nexgen, asserting over

23   twenty claims for relief in San Mateo County Superior Court (the "Lawsuit").  ER 32; Settlement

24   Order 3.  The complaint alleged, among other things, that FNB and Nexgen conspired to take the

25   East Palo Alto properties from Debtor by improperly recording the mechanic's liens and the notice

26   of default.  *Id.*  After extensive motion practice, at the time the Bankruptcy Court ordered the

27   conversion to Chapter 7 in March 2016, the only remaining claims against FNB in the Lawsuit

28   included breach of contract, fraud, and wrongful foreclosure; and the only remaining claim against

Nexgen was breach of contract. *Id.* FNB and Nexgen had also filed cross-complaints against Debtor. *Id.* In 2014, the Superior Court entered two orders awarding monetary sanctions of $3,360 and $7,352 against Debtor and in favor of FNB and Nexgen, for failure to comply with discovery. ER 32.

### B.    Conversion to Chapter 7

In July 2015, the Bankruptcy Court ordered Debtor to confirm a plan by January 2016. Settlement Order 3. Immediately thereafter, Debtor moved to dismiss the bankruptcy case. *Id.* FNB and Nexgen opposed the motion and urged conversion instead. *Id.* Debtor then moved to withdraw the motion to dismiss. The Bankruptcy Court conditioned the withdrawal on payment of reasonable attorneys' fees to FNB and Nexgen in opposing Debtor's motion to dismiss. Conversion Order 2-3; ER 141 et seq. Based on Debtor's agreement to withdraw the motion, the Bankruptcy Court entered a sanction order on September 16, 2015, against Debtor, awarding attorney fees of $17,523 to FNB and $11,321.25 to Nexgen. *Id.* FNB also moved to convert the case to Chapter 7 on September 2, 2015. Nexgen's RJN ("Bankr. Dkt."), ECF 35-7. Debtor filed a Chapter 11 reorganization plan the next day on September 3, 2015 ("Plan"). *Id.*

The Bankruptcy Court found several issues with the Plan that would prevent it from being confirmed. Conversion Order 5. First, the Plan stated that the creditors will be paid from the proceeds of the Lawsuit and made no mention of a settlement. *Id.* at 6. In addition, FNB and Nexgen would not be paid anything under the Plan. *Id.* Another is that FNB and Nexgen asserted that their unsecured claims were improperly classified, leaving other creditors to vote as a block, effectively preventing FNB and Nexgen from blocking the Plan's approval. *Id.* at 5-6.

On September 28, 2015, the Bankruptcy Court granted the motion to convert the case to Chapter 7 and Mr. Fred Hjelmeset was appointed trustee of the estate. Conversion Order; Hjelmeset Br. 6, ECF 27; Order Denying Reconsideration 1. The Bankruptcy Court found that Mr. Kennedy, as the sole member of Debtor, abdicated his fiduciary duty as the debtor-in-possession by making no offers to settle the Lawsuit and preferred to "roll the dice on the Lawsuit" which would potentially benefit him. Conversion Order 10. As such, the court found that the conversion to Chapter 7 was warranted and appointment of a trustee would be in the best

interest of the creditors and the estate.  *Id.* at 16.  Debtor moved for reconsideration of the order converting the case to Chapter 7, which the Bankruptcy Court denied on February 16, 2016.  *Id.* Following conversion, the Lawsuit's jury trial was continued to February 29, 2016.  Settlement Order 3; Appellants' Opening Br. 4 ("AOB-s"), ECF 21.

After conducting a review of the documents relating to the affairs of the estate, including the discovery and pleadings in the Lawsuit, Trustee Hjelmeset moved on January 19, 2016 for an order authorizing the Trustee to enter into settlements with FNB and Nexgen.  Settlement Order 1, 4.  The terms of the settlements are as follows.  FNB agreed to pay the Trustee $88,007.20.  *Id.* at 5.  FNB will conduct a foreclosure sale of the lots, and credit bid no less than $250,000, and then deliver the title of the Lots to Trustee.  *Id.*  Any gross sale proceeds will also be remitted to the Trustee.  *Id.*  FNB will waive the right to collect sanctions against Debtor imposed by the Superior Court and by the Bankruptcy Court.  The foreclosure on the Lots will eliminate the junior liens claimed by Patel and others.  *Id.*  As for Nexgen, Nexgen agreed to pay the Trustee $50,000 and to waive its right to collect sanctions against Debtor.  Trustee will dismiss the Lawsuit against FNB and Nexgen, who will in turn withdraw their cross-complaints.  *Id.*  Both FNB and Nexgen will also withdraw their proofs of claims in the bankruptcy case.  *Id.*  On February 16, 2016, the Bankruptcy Court granted the motion authorizing the Trustee to enter into settlements with FNB and Nexgen under the proposed terms.  *Id.* at 16.

On March 2, 2016, in accordance with the settlement agreements, the Trustee, FNB, and Nexgen filed a stipulation to dismiss the Lawsuit with the Superior Court with prejudice.  AOB-s 1; Hjelmeset Br. 9.

## II.   JURISDICTION

28 U.S.C. section 158(a)(1) confers jurisdiction on this Court to adjudicate these bankruptcy appeals.

### A.   Jurisdiction over Appeal in Appellate Case No. 16-cv-01066

An order dismissing or converting a Chapter 11 bankruptcy case to a Chapter 7 case is a final and appealable order.  *In re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008).  As such, the Court has jurisdiction over the appeal in Appellate Case No. 16-cv-01066.

United States District Court
Northern District of California

5

**B.      Jurisdiction over Appeal in Appellate Case No. 16-cv-00856**

As for the order authorizing Trustee to enter into settlements with FNB and Nexgen, the order authorizing settlements disposed of creditors' claims, and therefore was also final and appealable.  *See id.* at 769; *In re Wire Comm. Wireless, Inc.*, 373 F. App'x 707, 708 (9th Cir. 2010) (finding that the compromise order settling a lawsuit determined and affected the substantive rights of the parties and thus is final and appealable).

However, Appellees also request this Court to dismiss the appeal in Appellate Case No. 16-00856 as moot.  Appellees argue that the constitutional and equitable mootness doctrines prohibit this Court from considering the appeal of the order authorizing settlements because Appellants had failed to obtain a stay of the Settlement Order pending appeal and the Lawsuit was dismissed with prejudice.  Hjelmeset Br. 18-19; Nexgen Br. 7-8.  They further contend that this Court lacks authority to direct the state court to revive this Lawsuit and that the mandatory five-year statute of limitations on bringing a lawsuit to trial had already expired on May 24, 2016.  *Id.* at 8; Hjelmeset Br. 19.  In response, Appellants contend that the appeal is not moot because they have filed an adversary proceeding and a motion for injunctive relief to remove the dismissal.  Reply-s 13, ECF 41.  Appellants further argue that the Trustee, FNB, and Nexgen wrongly interpreted the settlement agreements, which did not allow for accelerating the dismissal.  *Id.* at 14.

Issues relating to jurisdiction, including mootness, are reviewed de novo.  *In re Wiersma*, 483 F.3d 933, 938 (9th Cir. 2007).  "The party asserting mootness has a heavy burden to establish that there is no effective relief remaining for court to provide."  *In re Focus Media, Inc.*, 378 F.3d 916, 923 (9th Cir.2004) (quotations and citations omitted).  Bankruptcy appeals may become moot in one of two ways.  First, events may occur that make it impossible for the appellate court to fashion effective relief.  *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 187 (9th Cir. 1977).  For example, when a trustee has already sold assets to third parties, a court may be powerless "to undo what has already been done."  *Id.*  Second, an appeal may become equitably moot when "[a]ppellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court," thus "permitt[ing] such a

United States District Court
Northern District of California

1    comprehensive change of circumstances to occur as to render it inequitable . . . to consider the

2    merits of the appeal." *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981).

3            Appellees have not met their burden in establishing constitutional mootness.  Although

4    state courts require that trials must start "within five years after the action is commenced," it may

5    be extended by the parties' stipulation.  Cal. Civ. Proc. Code § 583.330; *Gaines v. Fid. Nat. Title*

6    *Ins. Co.*, 62 Cal. 4th 1081, 1093 (2016).  In addition, a state court is not without power to set aside

7    a dismissal if it finds that relief to be proper.  Cal. Civ. Proc. Code § 473(b); *Clark v. First Union*

8    *Sec., Inc.*, 153 Cal. App. 4th 1595, 1608 (2007) (holding that "[a]ll courts have inherent powers

9    that enable them to carry out their duties and ensure the orderly administration of justice").

10   Appellees have not presented a situation where all avenues to set aside the dismissal with

11   prejudice are foreclosed to Appellants.

12           Appellees also have not adequately demonstrated equitable mootness.  It is not disputed

13   that the Bankruptcy Court entered its order authorizing settlements on February 16, 2016,

14   Appellants filed a notice of appeal three days later, and the Trustee carried out the terms of the

15   settlement agreements including dismissing the Lawsuit on March 8, 2016.  AOB-s 4.  Appellants

16   did not seek a stay for enforcement of the settlement agreements until July 12, 2016.  Reply-s 13.

17   In any other situation where a party does not provide any explanation for its failure to seek a stay,

18   the appeal is likely moot.  However, Appellants here are pro se and likely have misunderstood the

19   terms of the settlement agreements.  *Id.*  The Court will make allowances for their oversight here

20   given that they are pro se litigants.  *In re Kashani*, 190 B.R. 875, 883 (B.A.P. 9th Cir. 1995).  As

21   discussed above, there may be ways for the dismissal of the Lawsuit to be set aside.  There is thus

22   no sufficient showing that there has been a "comprehensive change of circumstances" as to render

23   it inequitable to consider the merits of the appeal.  Accordingly, the Court does not find this case

24   to be equitably moot.

25   **III.     STANDARD OF REVIEW**

26      **A.     Conversion Order**

27           The bankruptcy court's decision to convert a Chapter 11 case to Chapter 7 is reviewed for

28   abuse of discretion.  *In re Consol. Pioneer Mortg. Entities*, 264 F.3d 803, 806 (9th Cir. 2001); *In*

United States District Court
Northern District of California

1    *re Johnston*, 149 B.R. 158, 160 (B.A.P. 9th Cir. 1992).  Although Appellants appeal the order

2    denying reconsideration of the Conversion Order in Appellate Case No. 16-cv-01066, this Court will

3    evaluate Appellants' appeal as being of the Conversion Order, and not the order denying

4    reconsideration.  *Matter of Nicholson*, 779 F.2d 514, 515-16 (9th Cir. 1985).  This is appropriate

5    especially because Appellants focus on the underlying merits of the Conversion Order and do not

6    present any substantive argument seeking review of the order denying the motion for reconsideration.

7    *See also* FNB Br. 10, No. 16-01066, ECF 25.  Regardless, the bankruptcy court's denial of a motion

8    for reconsideration is also reviewed for abuse of discretion.  *In re Kaypro*, 218 F.3d 1070, 1073

9    (9th Cir. 2000); *In re Sewell*, 345 B.R. 174, 178 (B.A.P. 9th Cir. 2006).

10       **B.    Settlement Order**

11       A "bankruptcy court's order approving the trustee's application to compromise [a]

12   controversy is reviewed for abuse of discretion."  *In re A & C Properties*, 784 F.2d 1377, 1380

13   (9th Cir. 1986).   A bankruptcy court's approval of a compromise will not be overturned merely

14   because the bankruptcy court failed explicitly to consider and make findings on the precise factors

15   set forth in *In re A & C Properties*.  *Id.* at 1383.  Rather, "where the record supports approval of

16   the compromise, the bankruptcy court should be affirmed," even if the bankruptcy court has made

17   only general findings supporting the compromise.  *Id.*

18       The bankruptcy court is not required to conduct an independent investigation into the facts

19   of the case underlying the compromise, nor is the bankruptcy court required to conduct a mini-trial

20   of that case before it can approve a compromise as fair and equitable.  *In re Blair*, 538 F.2d 849,

21   851-522 (9th Cir. 1976).  "It is not necessary to satisfy each of these factors provided that the

22   factors as a whole favor approving the settlement."  *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417

23   (Bankr. N.D. Cal. 2004).  The record must ultimately disclose, however, that the bankruptcy court

24   reached an "informed and independent judgment" as to the fairness of the compromise.  *Protective*

25   *Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

26       **C.    Abuse of Discretion Standard**

27       A bankruptcy court abuses its discretion if it bases a decision on an incorrect legal rule, or

28   if its application of the law was illogical, implausible, or without support in inferences that may be

United States District Court
Northern District of California

8

1   drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009);

2   *In re Ellsworth*, 455 B.R. 904, 914 (B.A.P. 9th Cir. 2011). The Bankruptcy Court's rulings may

3   be affirmed on any ground supported by the record. *Hartmann v. Cal. Dep't of Corr. & Rehab.*,

4   707 F.3d 1114, 1121 (9th Cir. 2013). A factual finding is clearly erroneous if, after examining the

5   evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been

6   committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

7   "A mixed question of law and fact exists where the relevant facts are undisputed and the

8   question is whether those facts satisfy the applicable legal rule." *Mathews v. Chevron Corp.*, 362

9   F.3d 1172, 1180 (9th Cir. 2004). "Mixed questions of law and fact are reviewed de novo;

10  however, the underlying factual findings are reviewed for clear error." *Id.* In both appeals here,

11  there are no mixed questions of law and fact because the parties disagree on the facts.

12  Accordingly, the proper standard of review for both appeals is abuse of discretion.

13  This Court will then conduct a two-step inquiry to determine whether the Bankruptcy

14  Court has abused its discretion: (1) reviewing de novo whether the Bankruptcy Court "identified

15  the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy

16  court's application of the legal standard was illogical, implausible or "without support in

17  inferences that may be drawn from the facts in the record." *In re Ellsworth*, 455 B.R. at 914.

18  **IV.   DISCUSSION**

19  Aside from the briefing addressing the underlying merits of the appealed orders, the parties

20  have presented several requests and motions to this Court. First, Nexgen and FNB have filed

21  requests for judicial notice in connection with both appeals. FNB also moves to dismiss certain

22  Appellants from Appellate Case No. 16-cv-01066 for lack of appellate standing. In addition, FNB

23  filed a motion seeking clarification regarding Appellants' appendix in Appellate Case No. 16-cv-

24  01066. Before addressing the parties' arguments on the underlying merits of the appealed orders,

25  the Court first turns to these issues.

26  **A.   Judicial Notice**

27  Nexgen has requested judicial notice of an excerpt of the bankruptcy docket for the matter

28  titled "In re Weeks Street LLC" in the U.S. Bankruptcy Court, Norther District of California, San

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    Jose Division, Case No. 07-54183, attached to the request as Exhibit 1.  Nexgen RJN, ECF 35.

2    FNB has also requested judicial notice of nine documents, attached to the request as Exhibits 1 to

3    9: (1) an excerpt of the bankruptcy docket in the same case from January 1, 2015 to May 18, 2016;

4    (2) FNB's proofs of service for its motion to convert chapter 11 case to chapter 7 and supporting

5    documents; (3)-(6) declarations of Goldstein, Puri, Said, and Patel in opposition to FNB's motion

6    to convert and in support of Kennedy's motion for reconsideration; (7)-(8) declarations of

7    Goldstein and Patel in opposition to Trustee's motions for settlements and in support of

8    Kennedy's motion for reconsideration; and (9) Bankruptcy Court's Order denying motion for

9    reconsideration.  FNB RJN, ECF 18, No. 16-01066.

10         Judicial notice is appropriate with respect to all these exhibits because they are documents

11   publicly filed with the Bankruptcy Court in the Northern District of California.  *See Mir v. Little*

12   *Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of

13   public record).  Appellants have neither opposed the request for judicial notice nor disputed the

14   authenticity of the documents.  The request for judicial notice is GRANTED with respect to all the

15   exhibits attached to the requests of Nexgen and FNB.

16         **B.     FNB's Motion to Dismiss for Lack of Standing in Appellate Case No. 16-cv-01066**

17         FNB moves to dismiss Appellants Samuel Goldstein, Chacko Neroth, Pravin Patel, Suraj

18   Puri, and Khatera Said (the "Inactive Creditors") from the appeal in Appellate Case No. 16-cv-

19   01066 because they lack standing to appeal the Order Denying Reconsideration.  Mot., ECF 17,

20   No. 16-01066.  FNB argues that the Inactive Creditors do not meet the "person aggrieved"

21   standard.  *Id.* at 2, 5 (citing *Matter of Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).  FNB further

22   claims that they did not join in the motion for reconsideration, did not present any legal argument,

23   and did not appear at the relevant hearing.  *Id.* at 7.

24         Appellants in opposition argue that the declarations filed in support of Debtor's opposition

25   to the motion to convert or in support of Kennedy's motion for reconsideration of the Conversion

26   Order demonstrate that the Inactive Creditors have standing.  Opp'n 3-4, ECF 23, No. 16-01066.

27   Specifically, Goldstein and Puri filed declarations in support of Debtor's opposition.  *Id.* at 2.

28   Neroth, Said, Puri, Patel and Goldstein also filed declaration in support of Kennedy's motion for

United States District Court
Northern District of California

1   reconsideration.  *Id.* at 2-3.

2           As the parties invoking appellate jurisdiction, Appellants Goldstein, Neroth, Patel, Puri,

3   and Said have the burden of establishing that they have appellate standing.  *Susan B. Anthony List*

4   *v. Driehaus*, 134 S. Ct. 2334, 2342 (2014).  More specifically, appellate standing in bankruptcy is

5   determined by applying the "person aggrieved" test, which reflects the principle that "only one

6   who is directly and adversely affected pecuniarily has standing to appeal a bankruptcy court's

7   order."  *In re Menk*, 241 B.R. 896, 917 (B.A.P. 9th Cir. 1999).  The person-aggrieved test for

8   appellate bankruptcy standing is more exacting than the requirements for general Article III

9   standing.  *In re Dexter Distrib. Corp.*, No. BAP-AZ-09-1386, 2010 WL 6466583, at *4 n.14

10  (B.A.P. 9th Cir. Oct. 21, 2010).  The more stringent nature of the bankruptcy appellate standing

11  test is "'rooted in a concern that freely granting open-ended appeals [to] those persons affected by

12  bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy

13  matters.'"  *In re Benham*, No. 13-00205, 2014 WL 4543268, at *3 (C.D. Cal. Sept. 12, 2014)

14  (citing *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013)).  "[A]attendance and objection should

15  usually be prerequisites to fulfilling the 'person aggrieved' standard" unless appellants did not

16  receive proper notice of the proceedings below.  *In re Commercial W. Fin. Corp.*, 761 F.2d 1329,

17  1335 (9th Cir. 1985).

18          The parties do not dispute that there was adequate notice of the proceeding below so the

19  issue is whether the Inactive Creditors meet the "person aggrieved" standard based on their filed

20  declarations.  It seems clear that the conversion of the case from Chapter 11 to Chapter 7 affects

21  the Inactive Creditors' interest because their unsecured debts ultimately may not be recovered in a

22  Chapter 7 liquidation.  *E.g.*, *In re Powerine Oil Co.*, 59 F.3d 969, 972 (9th Cir. 1995) (noting that

23  "unsecured creditors could expect to receive much less than one-hundred cents on the dollar in a

24  chapter 7 liquidation"); *In re Mitan*, 178 F. App'x 503, 506 (6th Cir. 2006).  Accordingly, the

25  Inactive Creditors have a pecuniary stake in the manner in which the estate is liquidated and can

26  meet the "person aggrieved" standard in this case.  Although the Court recognizes that the Inactive

27  Creditors did not join in the opposition to the motion to convert or the motion for reconsideration,

28  their opposition was evident in their supporting declarations.  While submitting a declaration

1    normally would not confer standing in the absence of an objection or appearance at the hearing,

2    the Court here will make reasonable allowances for pro se litigants and will construe their papers

3    and pleadings liberally.  *In re Kashani*, 190 B.R. at 883.

4    **C.    Motion for Clarification**

5         FNB argues that Appellants' appendix fails to adequately designate items for their record

6    on appeal, is incomplete, and was not properly served.  Mot. Seeking Clarification 1, ECF 21, No.

7    16-01066.  For example, FNB points out that the appendix contains no Exhibit 4 and that multiple

8    documents were filed under a single exhibit tab.  *Id.* at 2.  Accordingly, FNB contends that the

9    appendix is confusing and proper citation to the record cannot be made.  *Id.*  FNB requests

10   Appellants to submit a revised appendix and to serve a hard copy.  *Id.* at 3.

11        Appellants filed a response, explaining how the exhibits in the appendix are organized.

12   Resp. to Mot. Seeking Clarification 1, ECF 28, No. 16-01066.  Appellants claim that a phone

13   message was left for FNB with regard to this matter.  Specifically, Appellants state that the tab 1

14   contains bankruptcy court documents numbered 0 through 199 and the reason that tabs 4 and 8

15   contain no exhibits is because Appellants submitted no documents beginning with 400 or 800.  *Id.*

16        Federal Rules of Bankruptcy Procedure requires that "the appellant must serve and file

17   with its principal brief excerpts of the record as an appendix."  Fed. R. Bankr. Proc. 8018(b)(1).

18   The appendix must contain relevant entries in the bankruptcy docket, any orders, pleadings, jury

19   instructions, findings, conclusions, or opinions relevant to the appeal, and other documents.  *Id.*  A

20   lack of an adequate record on appeal can support a basis for dismissing the appeal or summarily

21   affirming the Bankruptcy Court's decision.  *In re Yun*, 476 B.R. 243, 251 (B.A.P. 9th Cir. 2012).

22        Although Appellants' appendix is confusing in many ways, Appellants attempted to

23   explain to FNB in their response how the documents are organized.  Given that FNB did not file a

24   reply in support of its motion seeking clarification, the Court assumes that the issue had been

25   resolved and sees no need to impose on Appellants the requirement to organize their appendix in a

26   particular manner at this time.  Further, a lack of an adequate record does not mandate an

27   automatic dismissal but rather, provides this Court the discretion to dismiss the appeal on this

28   basis.  *See In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999).  Here, the Court concludes

United States District Court
Northern District of California

that Appellants' appeal should be permitted to go forward as the record is adequate to allow proper review.  In light of Appellants' pro se status, and absent any demonstrated prejudice to FNB and other appellees, the Court declines to dismiss the appeal on this basis.

**D.     Appellate Case No. 16-cv-01066: Bankruptcy Court's Order Granting the Motion to Convert and Denying Reconsideration**

The Bankruptcy Court granted the motion to convert because it found that Mr. Kennedy, as sole member of Debtor and in complete control of Debtor, had not been acting in the best interests of the creditors and the estate.  Conversion Order 10-11.  The Bankruptcy Court first explained that a debtor-in-possession of a Chapter 11 estate is a fiduciary to all its creditors and equity security holders.  *Id.* at 7-8.  According to the Bankruptcy Court, despite FNB's offer to settle the Lawsuit, Mr. Kennedy insisted on "roll[ing] the dice on the Lawsuit," and refused to consider settlement, hoping that there would be recovery above the creditors' claims to his own benefit.  *Id.* at 4, 10.  The Bankruptcy Court then concluded Mr. Kennedy abdicated his fiduciary duty in failing to consider settling the Lawsuit and that a Chapter 7 trustee can better serve the interests of the creditors and the estate.  *Id.* at 10-11.

**i.     Whether Bankruptcy Court Identified the Correct Legal Rule**

Appellants use "Error of Law" in a heading in their brief, suggesting that the Bankruptcy Court committed an error of law.  Appellants' Opening Br. 9 ("AOB"), ECF 13, No. 16-01066.  They first argue that the Bankruptcy Court dismissed reconsideration of the Conversion Order without reference to any specific facts or law.  *Id.*  They next contend that the Bankruptcy Court did not evaluate the Lawsuit, specifically in accordance with the factors set forth in *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986).  AOB 13-14.  The Appellees respond that there is no disagreement that the Bankruptcy Court relied on the correct legal rule and that Appellants are only arguing that the Bankruptcy Court committed error in its fact finding.  FNB Resp. Br. 11, 13, ECF 25, No. 16-01066.  Further, the requirement that the court needs to evaluate the Lawsuit as an alternative to settlement is not the applicable law.  *Id.* at 18.

a.   11 U.S.C. section 1112(b) is the correct legal rule

11 U.S.C. section 1112(b) is the statute governing whether a case should be converted to

1    Chapter 7.  11 U.S.C. section 1112(b)(1) permits a bankruptcy court to "convert a case. . . to a case

2    under chapter 7 or dismiss a case[,] whichever is in the best interests of creditors and the estate, for

3    cause."  "Cause" is undefined, but the statute includes a nonexclusive list of factors that may

4    constitute "cause," including "gross mismanagement of the estate," "failure to maintain

5    appropriate insurance that poses a risk to the estate or to the public," and "failure to comply with

6    an order of the court."  *See* 11 U.S.C. § 1112(b)(4)(B), (C), (E). "The bankruptcy court has broad

7    discretion in determining what constitutes 'cause' under section 1112(b)."  *In re Sullivan*, 522

8    B.R. 604, 614 (B.A.P. 9th Cir. 2014).

9        The Court finds that the Bankruptcy Court identified the correct legal rule and Appellants

10   fail to show otherwise.  The Conversion Order correctly set forth 11 U.S.C. section 1112(b) as the

11   governing statute and the examples of what constitutes "cause" in section 1112(b)(4).  Conversion

12   Order 6.  The Order also correctly noted that the list of examples constituting "cause" in section

13   1112(b)(4) is not exclusive and that the burden of proof on a motion to convert is on the movant.

14   *Id.* at 6-7.  On appeal, Appellants rely on the same statute, 11 U.S.C. section 1112(b), and

15   reference the same burden of proof as the Conversion Order.  AOB 9-10.  Appellants appear to

16   argue that FNB, as the movant on the motion to convert, did not meet the preponderance of

17   evidence standard in the court below.  *Id.* at 10.  However, they did not point to any error of law in

18   relation to 11 U.S.C. section 1112(b).  *Id.*

19       b.  *In re A & C Properties* is not applicable on a motion to convert

20       With respect to evaluation of alternatives, the Court finds that the Bankruptcy Court did

21   not err in not evaluating the benefits and risks of trial of the Lawsuit as an alternative to settlement

22   pursuant to *In re A & C Properties* because that is not the applicable law on a motion to convert.

23   Appellants rely on *In re Sullivan* and *In re Hampton Hotel Inv'rs, L.P.* to argue that the

24   Bankruptcy Court should have made that evaluation.  AOB 13-14; 522 B.R. 604, 613 (B.A.P. 9th

25   Cir. 2014); 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001).

26       In *In re Sullivan*, the appellate court faulted the lower court for thinking that granting or

27   denying the appellee's motion to dismiss a Chapter 11 filing were the only alternatives, without

28   considering the two other options, namely that the debtor could have proposed a plan or convert

14

United States District Court
Northern District of California

1    the case to chapter 7.  522 B.R. at 613.  Further, according to the *In re Sullivan* appellate court,

2    nothing in the record below supported the argument that the case could not be converted to chapter

3    7.  *Id.* at 614.  Based on this record, the appellate court reversed the lower court for "[failing] to

4    consider whether dismissal or conversion was in the best interest of the creditors and estate."  *Id.*

5    at 614.  However, nowhere in *In re Sullivan* did the appellate court require that all possible

6    resolutions of a bankruptcy case must be evaluated on a motion to convert, such as trial of the

7    Lawsuit alternative here.  It also made no mention of the factors in *In re A & C Properties*, which

8    applies to a "compromise" approval and not pertinent on a motion to convert.  784 F.2d at 1381.

9    Rather, *In re Sullivan* requires that a court on a motion to convert must determine a pathway

10   forward that would be in the best interest of the creditors and estate, which is exactly what the

11   Bankruptcy Court did here.  The Bankruptcy Court first identified the correct legal rule set forth in

12   11 U.S.C. section 1112(b), as well as in *In re Sullivan*, stating that the conversion or dismissal

13   must be "in the best interests of creditors and estate."  Conversion Order 6-7.  The Bankruptcy

14   Court considered the Chapter 11 Plan filed by Debtor but found it unacceptable.  *Id.* at 5.  The

15   Bankruptcy Court would have also let Debtor's motion to dismiss go forward but for Debtor's

16   withdrawal of the motion.  Settlement Order 3.  The Bankruptcy Court ultimately found "cause" to

17   convert because Debtor sought to prosecute the Lawsuit solely in his self-interest to the exclusion

18   of the other creditors' interest.  Conversion Order 10.  The analysis made by the Bankruptcy Court

19   thus focused on what would be "in the best interests of creditors and estate," which is the correct

20   legal standard.

21          *In re Hampton* does not impose a different legal rule.  270 B.R. 346, 359 (Bankr. S.D.N.Y.

22   2001).  Similar to *In re Sullivan*, *In re Hampton* concerned a motion to convert or dismiss a

23   Chapter 11 case and made no mention of evaluating a settlement in accordance with the factors in

24   *In re A & C Properties*.  In noting that a court must evaluate "alternatives, and choose[] the

25   alternative that would be most advantageous to the estate as a whole," the *In re Hampton* court

26   referred to conversion or dismissal as the "alternatives."  *Id.* at 359 (listing factors to consider

27   when deciding whether to convert or dismiss a case).  Nothing in *In re Hampton* imposes a

28   requirement to evaluate a specific aspect of a bankruptcy case, such as the Lawsuit, in accordance

15

United States District Court
Northern District of California

1  with factors in *In re A & C Properties* on a motion to convert.  Accordingly, the Bankruptcy Court

2  did not err for not evaluating the Lawsuit in accordance with *In re A & C Properties* on FNB's

3  motion to convert.

4        c.  Fed. R. Civ. Proc. 59(e) is the correct legal rule for a motion for reconsideration

5        As to Appellants' argument that the Bankruptcy Court did not reference any specific facts

6  or law in the Order Denying Reconsideration, the Court notes as a preliminary matter that the

7  focus of the appeal in Appellate Case No. 16-cv-01066 is of the Conversion Order and not the Order

8  Denying Reconsideration, as discussed above.  Regardless, the Court finds that the Order Denying

9  Reconsideration relied upon the correct legal rule with respect to a motion for reconsideration, namely

10  Fed. R. Civ. Proc. 59(e), which is also referenced in Appellants' Opening Brief.  Order Denying

11  Reconsideration 2-3; AOB 9.  Appellants fail to point to any error of law and the vague suggestion in

12  their brief that there is an error of law is unsupported.  Accordingly, the Court finds that the

13  Bankruptcy Court identified the correct legal rule in its Conversion Order as well as in its Order

14  Denying Reconsideration.

15        **ii.  Whether the Bankruptcy Court's Application of the Legal Standard was
16  Illogical, Implausible, or "Without Support in Inferences that May be
Drawn from the Facts in the Record"**

17        Appellants argue that FNB did not meet its burden in moving to convert the case to

18  Chapter 7.  AOB 10.  Appellants make a number of arguments in support of this contention, which

19  the Court addresses in turn below.  *Id.* at 11-24.

20        a.  Evidence that FNB made a settlement offer

21        First, Appellants claim that FNB submitted no authenticated evidence that FNB made an

22  offer to settle the Lawsuit.  *Id.* at 11-12.  They also assert that Debtor had made a settlement offer,

23  contrary to FNB's argument in its motion to convert.  *Id.* at 12.  Appellants further contend that

24  even if FNB made an offer, FNB's settlement offer was "smoke and mirrors" because the vacant

25  lots included in the settlement were not worth very much.  *Id.* at 5, 24.  In response, Appellees

26  point to a declaration and other facts in the record showing that FNB offered a settlement.  FNB

27  Resp. Br. 14-15.  Appellees also contend that Debtor itself had admitted that the vacant lots had

28  value at other times of the proceeding and the Bankruptcy Court was entitled to its credibility

1   determinations of Debtor's witnesses. *Id.* at 16-17.

2          The record below contains evidence supporting a finding that FNB made an offer to settle

3   the Lawsuit.  First, Appellants' own opening brief quotes a declaration stating that FNB had

4   offered a settlement.  AOB 6-7.  The declaration, made by Mr. Charles Smith, an attorney

5   representing Debtor in the Lawsuit, states that "FNB offered a settlement consisting of releasing

6   its encumbrances on the 4 vacant lots  . . ." during the mandatory settlement conference. *Id.* at 6.

7   Moreover, Appellants do not dispute that FNB had also made the offer in open court. *E.g.*, Sept.

8   23, 2015 Motion to Convert Hr'g Tr. 15:9-25, Bankr. Dkt. 758; FNB Br. 14; AOB 11.  Although

9   Appellants take issue that the Smith declaration was not submitted by FNB, this Court's review of

10  the record is not restricted to those portions of the record offered by FNB.  AOB 12.  Rather, this

11  Court takes into account all facts or inferences that may be drawn from the record to determine

12  whether the Bankruptcy Court's ruling may be supported.  *In re Ellsworth*, 455 B.R. at 914; *see*

13  *also ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (noting that the

14  lower court's ruling may be affirmed on any ground supported by the record).

15         As to whether the vacant lots had no value, making FNB's offer an "illusory" one, this

16  issue does not affect the Bankruptcy Court's determination that Mr. Kennedy abdicated his

17  fiduciary duty by refusing to consider settlement of the Lawsuit, including his failure to counter

18  FNB's offer, illusory or not.  First, the Conversion Order did not base its ruling on whether the

19  vacant lots had value.  Second, the Bankruptcy Court also noted that the value of the vacant lots

20  was disputed.  Order Denying Reconsideration 4.  As pointed out by Appellees and admitted by

21  Appellants, Debtor had once represented that "[s]ubject to the outcome of the approval process,

22  the four vacant lots within justified reason may be expected to [] reach again the $450,000 at

23  which FNB valued the lots in January 2008."  FNB Resp. Br. 16; Reply Br. 7, ECF 32.  Because

24  the value of the vacant lots was not the underlying reason for "cause" for conversion, and that

25  there was evidence supporting that FNB made an offer to settle the Lawsuit, the Bankruptcy Court

26  did not abuse its discretion in finding that FNB offered to settle the Lawsuit.

27                  b.   Evidence that Kennedy refused to settle

28          Appellants argue that FNB's representation that Debtor made no offer to settle the Lawsuit

was attorney argument and not evidence.  AOB 11-13.  In response, Appellees point out that Appellants misquote the Smith declaration in the opening brief.  FNB Resp. Br.  14-15. Regardless of whether the declaration is misquoted, Appellees argue that the allegation that Appellants made a counter offer to settle the Lawsuit remains unsupported.  *Id.* at 15.  Moreover, Appellees claim that the Steiner declaration cannot provide evidentiary support because it was only submitted in support of the motion for reconsideration and not the motion to convert.  *Id.*  On the motion for reconsideration, the Bankruptcy Court properly rejected the Steiner declaration, noting that it did not contain "newly discovered evidence" under Rule 59.  Additionally, the Bankruptcy Court concluded that the declaration would not have changed its ruling anyway.  *Id.*; Order Denying Reconsideration 3.

The Court finds that the record supports the Bankruptcy Court's finding that Mr. Kennedy refused to engage in settlement discussions regarding the Lawsuit.  According to the Smith declaration, Mr. Smith discussed with Mr. Kennedy and Mr. Paul Steiner, another counsel of Debtor in the Lawsuit, the possibility of having FNB disgorged $885,000.  Smith Decl. in support of Debtor's Opp'n to the Mot. to Convert, Bankr. Dkt. 656-2.  The declaration also states that FNB's counsel had expressed to Mr. Smith that FNB would not be open to disgorging $885,000. At best, the declaration suggests that Debtor considered the option of having FNB disgorge $885,000 and might have asked FNB to do so.  However, a mere consideration and request for more money does not support the conclusion that Debtor made a counter offer to settle the Lawsuit.  Moreover, the Bankruptcy Court explicitly stated that both in its papers and during the hearing on the motion to convert, Debtor failed to refute the statement that it never made an offer to settle.  Conversion Order 4.  This is confirmed by Debtor's opposition to the motion to convert and the transcript of the hearing held on the motion.  Bankr. Dkt. 656, FNB Tab 22, No. 16-01066; Sept. 23, 2015 Motion to Convert Hr'g Tr.

The Steiner declaration is not sufficient to show that the Bankruptcy Court abused its discretion.  The Bankruptcy Court properly excluded the Steiner declaration because it was not "newly discovered evidence" under Rule 59.  Nonetheless, the Bankruptcy Court did consider it and did not find it persuasive.

United States District Court
Northern District of California

1    Although Appellants reiterate the argument that FNB failed to meet the preponderance of

2    evidence standard, the Court on appeal does not review evidence by the preponderance of

3    evidence standard.  AOB 10, 13.  Instead, the Court reviews this case under an abuse of discretion

4    standard and can only reverse if no inference can be drawn from the facts in the record to support

5    the Bankruptcy Court's decision.  Here, the record contains factual support that the Debtor did not

6    make an offer to settle to Lawsuit and the existence of a controverted fact, without more, does not

7    justify a reversal.

8              c.   Evaluation of the Lawsuit pursuant to the factors of *In re A & C Properties*

9              Because Appellants incorrectly argue that the Bankruptcy Court must evaluate the Lawsuit

10   based on the factors set forth in *In re A & C Properties*, as discussed above, the Court will not

11   address the parties' argument with respect to the evaluation of the Lawsuit in Appellate Case No.

12   16-cv-01066.  AOB 13-16; FNB Br. 16, 21.  The Court will take into account the factors of *In re A*

13   *& C Properties* when the Bankruptcy Court's Settlement Order is discussed below for Appellate

14   Case No. 16-00856.

15              d.   *In re Hampton Hotel*, *In re Anchorage Nautical Tours*, *In re Brutsche*, *In re*
              *Bowman*

16

17            Appellants further argue that the Bankruptcy Court incorrectly applied four cases discussed

18   in the Conversion Order to the facts of this case because the cases are distinguishable.  AOB 17-

19   22.  Appellants further rely on *Hampton* to argue that the Bankruptcy Court wrongly relied on

20   FNB's motion to convert to reach its conclusion without conducting an evidentiary hearing.  *Id.* at

21   17-18.  In response, Appellees argue that no authority supports the claim that an evidentiary

22   hearing was required.  FNB Resp. Br. 22.  Appellees also assert that the Conversion Order did not

23   rely on the alleged misconduct of Mr. Kennedy so the comparison with the misconduct of the

24   parties in *Hampton* is irrelevant.  *Id.*  According to Appellees, Appellants also misquote or

25   incorrectly interpret the cases.  *Id.* at 22-24.  The Court discusses each of the four cases below.

26            Although the court in *Hampton* held an evidentiary hearing, the Court finds no authority,

27   and Appellants provide none, that the Bankruptcy Court must hold an evidentiary hearing on a

28   motion to convert.  Moreover, the lack of an evidentiary hearing was not an objection raised

United States District Court
Northern District of California

1   below.  With respect to Appellants' contention that the Bankruptcy Court erroneously compared

2   the misconduct involved in *Hampton* to that of Mr. Kennedy, Appellants' argument does not

3   demonstrate an abuse of discretion.  First, the comparison of misconduct did not form the basis for

4   the ruling in the Conversion Order.  Conversion Order 14 ("the court's ruling is not premised on

5   the prior misconduct of Mr. Kennedy . . .").  Second, the Bankruptcy Court discussed *Hampton* for

6   the proposition that a court should decide on an alternative that would be most advantageous to the

7   estate and creditors, including determining whether "a debtor intended to treat all similarly

8   situated creditors equally and whether a chapter 7 trustee would have the ability to recover assets

9   for the estate."  Conversion Order 7.  Accordingly, there is no support for Appellants' argument

10  that the Bankruptcy Court relied on the comparison of misconduct to reach its decision.

11          With respect to *Anchorage Nautical Tours, Inc.*, Appellants similarly argue that the facts in

12  that case are distinguishable from this case and the Bankruptcy Court erroneously relied on the

13  case.  AOB 18-19; 145 B.R. 637, 642-43 (B.A.P. 9th Cir. 1992).  Specifically, Appellants claim

14  that Debtor did not surrender assets to a non-debtor corporation without a noticed hearing like the

15  debtor in *Anchorage Nautical Tours*.  AOB 18.  Again, the Conversion Order relies on *Anchorage*

16  *Nautical Tours* to underscore the principle that as a fiduciary to the creditors, the debtor "is not

17  free to deal with . . . property as it chooses, but rather holds it in trust for the benefit of the

18  creditors."  Conversion Order 8.  Accordingly, the Bankruptcy Court's ruling did not turn on the

19  specific facts in *Anchorage Nautical Tours*.

20          Appellants further argue that the Bankruptcy Court misapplied *In re Brutsche* but

21  Appellants have wrongly interpreted *In re Brutsche*.  AOB 19-20; 476 B.R. 298, 309 (Bankr.

22  D.N.M. 2012).  Appellants argue that *Brutsche* stands for the proposition that "dismissal would

23  allow the debtor an opportunity to fully prosecute its claims."  AOB 19.  In support of this

24  argument, Appellants selectively quote *Brutsche*, including a case discussed therein, *In re Midland*

25  *Marina, Inc.*, 259 B.R. 683, 686 (B.A.P. 8th Cir. 2001).  However, the statements relied upon by

26  Appellants did not form the basis for the ultimate holding in *Brutsche*.  Instead, despite the

27  arguments against conversion and the holdings in *In re Midland Marina*, *Brutsche* decided that a

28  conversion to Chapter 7 was in the best interest of the creditors and estate.  *Brutsche*, 476 B.R. at

United States District Court
Northern District of California

309-10.  As such, the Bankruptcy Court did not wrongly apply *Brutsche* to this case.

With respect to *In re Bowman*, Appellants argue that the facts in that case are distinguishable from this case and the Bankruptcy Court erroneously relied on the case.  AOB 21-22; 181 B.R. 836, 842 (Bankr. D. Md. 1995).  Appellants claim that the litigation in *Bowman* involved causes of action that are different from those asserted in the Lawsuit and a defendant who was not a creditor, unlike the case here, among other differences.  AOB 21-22.  However, these differences in the facts of the case do not show that the Bankruptcy Court abused its discretion.  Differences in facts of a case do not preclude the Bankruptcy Court from applying the case as long as the correct holding was identified and that the Bankruptcy Court's decision was supported by any fact or inference from the record.  Here, the Conversion Order relies on *Bowman* to analogize a situation where a debtor did not act in the best interests of the creditors and estate by rejecting a proposed settlement.  Conversion Order 9.  That the litigation in *Bowman* presents different circumstances does not negate the principle that the debtor must act in the best interests of the creditors and the estate, and should not reject a settlement in hopes of obtaining a recovery above the creditors' claims.  *Id.* at 9-10.  As discussed above, the Bankruptcy Court found that Debtor was not acting in the best interests of the creditors by rejecting a settlement offer without making any counter offer, similar to the situation in *Bowman*.  As such, the Court finds no abuse of discretion by the Bankruptcy Court in its application of *Bowman*.

e.   Bankruptcy Court's evaluation of Debtor's Chapter 11 Reorganization Plan

Appellants further argue that the Bankruptcy Court erred in disregarding Debtor's Chapter 11 plan and in rejecting the classification of FNB and Nexgen separately from the rest of the creditors.  AOB 22-23; Reply 11-12, ECF 32, No. 16-01066.  In response, Appellees contend that the Bankruptcy Court correctly identified the many problems faced by the Plan.  FNB Resp. Br. 24.  Because Appellants did not address all of the factors that prevented the Plan from being confirmed, the arguments are waived.  *Id.* at 25.

As noted above, 11 U.S.C. section 1112(b) sets forth the correct legal rule governing whether to convert a case to Chapter 7.  Section 1112(b) also contains an exception to dismissal or conversion

21

if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--

**(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

**(B)** the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--

    **(i)** for which there exists a reasonable justification for the act or omission; and

    **(ii)** that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Based on this provision, to qualify for the exception to conversion, a bankruptcy court must find that conversion is not in the best interests of the creditors and the estate *and* Debtor must establish all the conditions listed – a reasonable likelihood that a plan will be timely confirmed, that reasonable justification exists for Debtor's act or omission underlying the cause for conversion; and that the act or omission will be timely cured. *Id.* (emphasis added).  In the Conversion Order, the Bankruptcy Court acknowledged that Debtor was seeking relief from conversion based on this provision.  Conversion Order 15.  The Bankruptcy Court proceeded to explain that the Plan on file appears to be unconfirmable and found no indication that the Plan could be confirmed within a reasonable amount of time given that the bankruptcy case has been pending for at least eight years.  *Id.*  The Bankruptcy Court proceeded to identify specific problems that would prevent confirmation of the Plan, such as improper classification of the claims of FNB and Nexgen, lack of payment to FNB and Nexgen, and the dependency of the Plan on unpredictable potential outcomes of the Lawsuit.  *Id.* at 5-6; *see also In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 657 (9th Cir. 1997) (noting that "where not all creditors support the Plan, the debtor must prove that the creditors would receive as much under the Plan as they would receive in a liquidation under Chapter 7").  The Bankruptcy Court further noted that Debtor had conceded in its motion to dismiss that the estate is illiquid.  Order Denying Reconsideration 4-5; Debtor's Mot. to Dismiss 10, Bankr. Dkt. 597-1. The Bankruptcy Court also did not find that Debtor had established any justification for its breach of fiduciary duty or that the breach could be cured.  Conversion Order 15-16.

United States District Court
Northern District of California

Since the Bankruptcy Court had already found that conversion was in the best interests of the creditors and the estate, Debtor was not entitled to relief under this provision regardless of whether conditions listed in section 1112(b)(2)(A) and (B) were satisfied.  Moreover, the thrust of Appellants' argument pertains to whether the Plan could be confirmed, attempting to justify the separate classification of FNB and Nexgen and the value of the Lawsuit.  AOB 23-24; Reply 12-13.  This is insufficient to qualify for the exception because a plan that could be timely confirmed is but one of the many conditions required by section 1112(b)(2).  *E.g.*, *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 576 (D. Conn. 2016) (noting that the statute "makes clear that the party asserting application of the exception must demonstrate the existence of *all* of the listed conditions") (emphasis in original).  Appellants also attack the Bankruptcy Court for its finding that conversion would be in the best interest of the creditors and that Kennedy breached his fiduciary duty by refusing to engage in settlement negotiations, in connection with section 1112(b)(2)(B).  Reply 14.  However, the Court has already determined, as discussed above, that the Bankruptcy Court's finding on this point was not illogical, implausible or "without support in inferences that may be drawn from the facts in the record."  Section IV.D.ii.a-b, *supra*; *see In re Ellsworth*, 455 B.R. at 914.

**E.**     **Appellate Case No. 16-cv-00856: Bankruptcy Court's Settlement Order**

On February 16, 2016, the Bankruptcy Court granted Chapter 7 Trustee, Fred Hjelmeset's motions for an order authorizing him to enter into settlements with FNB and with Nexgen. Settlement Order.  Having reviewed the factors set forth in *In re A & C Properties*, the Bankruptcy Court concluded that "the compromise is a reasonable exercise of the Trustee's business judgment."  *Id.* at 16.  To reach that conclusion, the Bankruptcy Court found that Debtor did not have a high probability of winning the dispute for several reasons, such as having limited resources in prosecuting the Lawsuit and inadequate discovery.  *Id.* at 8-11.  According to the Bankruptcy Court, the objectors also did not address the Trustee's concern about funding subsequent appeals, which presented difficulty in collection.  *Id.* at 11.  The Bankruptcy Court further found that the settlements eliminate the expense of the Lawsuit and the sanction orders.  *Id.* at 12.  Finally, the Bankruptcy Court acknowledged that although the settlements do not guarantee

23

payments to unsecured creditors, it found that the Trustee nevertheless properly evaluated the assets to determine that these settlements were the best resolution for a case that was almost ten years old.  *Id.* at 13.

### i.    Whether Bankruptcy Court Identified the Correct Legal Rule

The Bankruptcy Court correctly identified the correct legal rule applicable in determining whether to authorize a settlement of the Lawsuit or a "compromise."  *Id.* at 6-7; *In re A & C Properties*, 784 F.2d at 1381.  Appellants do not dispute this.  AOB-s 1, 17.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *In re A & C Properties*, 784 F.2d at 1380-81. "[T]he bankruptcy court should usually give deference to a trustee's exercise of business judgment."  *In re Galloway*, No. BAP AZ-13-1085, 2014 WL 4212621, at *9 (B.A.P. 9th Cir. Aug. 27, 2014).  In determining the reasonableness and adequacy of a proposed settlement, the following factors are to be considered:

> (a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citation omitted).

"The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed."  *Id.*

### ii.    Whether the Bankruptcy Court's Application of the Legal Standard was Illogical, Implausible, or "Without Support in Inferences that May be Drawn from the Facts in the Record"

Appellants argue that the factual basis supporting the Bankruptcy Court's decision is not sound.  AOB-s 6.  As a preliminary matter, Appellants concede that the Bankruptcy Court correctly found that the second and third factors set forth in *In re A & C Properties* favor a compromise – "(b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily

United States District Court
Northern District of California

United States District Court
Northern District of California

attending it." AOB-s 17; 784 F.2d at 1381. As such, Appellants' argument for reversing the Bankruptcy Court rests on supposedly unsound factual finding in support of the first and fourth factors, "(a) [t]he probability of success in the litigation . . . (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.*

As noted above, the Court reviews the Bankruptcy Court's Settlement Order for abuse of discretion and will reverse only if Bankruptcy Court's application of the law is illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." *In re Ellsworth*, 455 B.R. at 914. Factual disputes and credibility findings are not sufficient for demonstrating an abuse of discretion. *E.g.*, *In re Lombard Flats, LLC*, No. 15-00870-PJH, 2016 WL 1161593, at *4 (N.D. Cal. Mar. 23, 2016) (holding that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses). Bearing this standard of review in mind, the Court discusses below the issues raised by Appellants.

> a. Probability of Success of the Lawsuit

Appellants argue that the Lawsuit had high probability of success against FNB because California law prohibits FNB's note accelerations for non-monetary defaults and foreclosure actions. AOB-s 12-13, 19-23. They also assert that the Lawsuit had a high probability of success against Nexgen because Nexgen's liens had "no reasonable relation to an action to foreclose," Nexgen committed a felony by recording a false lien, and the consequential damages were recoverable. *Id.* at 24-26. Appellants further fault the Bankruptcy Court for not addressing these liability issues. *Id.* at 26-27; Reply-s 1-2  As to damages, Appellants assert that the Bankruptcy Court only discussed damages with respect to certain "change orders," involving only $220,399, while the remaining 96% of the damages totaling $13,995,887 were not addressed. AOB-s 27-29.

Appellants also attack the Trustee, Mr. Fred Hjelmeset and his staff, claiming that they barely spoke to Mr. Kennedy and the attorneys prosecuting the Lawsuit, Mr. Steiner and Mr. Smith. *Id.* at 6-7. According to Appellants, the Trustee arrived at the decision to settle based only on a perfunctory review of the case. *Id.* As such, Appellants contend that the Trustees should also

United States District Court
Northern District of California

1    have no reason to question Debtor's decision not to hire an expert for the Lawsuit.  *Id.* at 10.  In

2    addition, Appellants find no reason why Debtor would need to hire an expert for the Lawsuit given

3    that the Lawsuit relied on information that is evident from the documents.  *Id.*; Reply-s 2-3.

4    Moreover, Appellants claim that FNB only had one expert and that Nexgen's expert had less

5    construction-design experience than Kennedy.  AOB-s 9-10.

6              In response, Appellees reiterate the findings of the Bankruptcy Court, such as the lack of

7    trial preparation and the Lawsuit's reliance on Kennedy as a witness who had made inconsistent

8    statements.  Hjelmeset Br. 12-13; FNB Br-s 12, 14-15, ECF 31; Nexgen Br. 10-12, ECF 35.  FNB

9    also argues that Appellants' analysis on liability and damages was incorrect.  FNB Br-s 12-14, 16.

10   FNB further claims that the Debtor would be unlikely to succeed at trial without an expert given

11   the complexity involved in calculating damages.  *Id.* at 16-17.

12             The Bankruptcy Court listed many reasons as to why the probability of success was low,

13   regardless of whether FNB and Nexgen were liable for the causes of action Debtor asserted

14   against them, as argued by Appellants.  Settlement Order 8; AOB-s 12-13, 24-26.  Whether the

15   Bankruptcy Court questioned the alleged 96% percent of the damages claimed also does not affect

16   the Bankruptcy Court's other factual findings.  AOB-s 19-27.   For example, one of the

17   Bankruptcy Court's factual findings was that Kennedy lacks credibility and had provided

18   inconsistent testimony.  Settlement Order 8; Hjelmeset Br. 13.  Another factual finding was that

19   the Lawsuit litigation counsel had conducted almost no discovery, had not deposed any key

20   witnesses, and had not retained any experts.  Settlement Order 8-9; Nexgen Br. 11; FNB Br-s 12,

21   14-16.  Debtor was indeed sanctioned by the state court for not complying with discovery.  FNB

22   Br-s 12.  All of these and other reasons stated in the Bankruptcy Court's order support a finding

23   that the Lawsuit did not have a high probability of success.  That the causes of action or alleged

24   damages might be meritorious, as argued by Appellants, do not negate the factual findings made

25   by the Bankruptcy Court.

26                 b.   Credibility of Trustee Hjelmeset, Kennedy, and the Lawsuit Litigation Counsel

27             Appellants take exception to Bankruptcy Court's finding that Kennedy lacks credibility as

28   a witness for the Lawsuit and that he had provided inconsistent testimony.  Settlement Order 8;

AOB-s 7.  Appellants argue that Kennedy's conduct was justified because he was not able to expunge the liens in response to FNB's request and the "inconsistent representation" alleged by Nexgen merely referred to disputes over "change orders."  *Id.* at 8-9.  Appellants further contend that the Bankruptcy Court should not have credited Trustee Hjelmeset over Debtor's Lawsuit counsel, Mr. Steiner and Mr. Smith.  *Id.* at 15, 29-30.  Lastly, Appellants assert that the possibility of an appeal does not support a low probability of success.  *Id.* at 14.

Hjelmeset counters that Appellants merely "dredge up the arguments they made in opposing the settlement motions as well as arguments that were not presented to the Bankruptcy Court."  Hjelmeset Br. 12.  Similarly, FNB argues that Appellants are simply disagreeing with the factual findings and fail to show an abuse of discretion.  FNB Br-s 12.

None of Appellants' arguments relating the weight the Bankruptcy Court gave to different witnesses or evidence justify a reversal.  The Bankruptcy Court is entitled to credit the Trustee, especially given his review of at least "several thousand pages of discovery and pleadings in the Lawsuit."  Settlement Order 4.  There is also no authority requiring the Trustee to conduct his review of the case in a particular manner.  Moreover, it was not illogical for the Bankruptcy Court to decide not to afford the declaration of Mr. Smith much weight because the declaration only conclusorily states that there is a high probability of success without legal and factual analysis.  *Id.* at 10-11.  On appeal, the Bankruptcy Court's credibility findings are given due deference and do not constitute sufficient ground for reversal here.  *E.g.*, *In re Lombard Flats*, 2016 WL 1161593, at *4.

c.   Paramount Interests of the Creditors

Lastly, Appellants contend that the paramount interest of the creditors was not met because the creditors were not paid in full, despite FNB's prior representation that the creditors would be paid in full.  AOB-s 10.  Appellants assert that after the case was converted to Chapter 7, many more claims were filed and those claims were not paid in full.  *Id.* at 10-11.  Specifically, Appellants take issue that FNB did not disgorge $885,274, an amount in excess of the loan principal from the sale of houses, *id.* at 2, 12, that Debtor did not receive anything under the settlement in violation of the "best interests of creditors and the estate," required in section

1   1112(b), *id.* at 11, that Debtor's attorneys were not paid, and that the property taxes were not paid,

2   *id.* at 12, 16, 17.

3          In addition, Appellants claim that the vacant lots that FNB contributed to the estate as part

4   of the settlement had no value. *Id.* at 14-15.  Appellants further criticize the Bankruptcy Court for

5   failing to take into account the monetary value of their claims. *Id.* at 13-14.  As such, Appellants

6   argue that the unsecure creditors should not be required to buy the Lawsuit from the estate.  *Id.* at

7   13.  According to Appellants, by releasing their claims in the Lawsuit, they have already

8   contributed $3,621,474 to the estate based on the value of their claims.  *Id.* at 13.  Appellants

9   further argue that the Bankruptcy Court erred in not analyzing how FNB arrived at FNB's

10   payment amount.  *Id.* at 16-17; Reply-s 4-5.

11          Appellees counter that unsecured creditors' lack of recovery does not bar the settlements,

12   as explained by the Bankruptcy Court.   Hjelmeset Br. 17; Nexgen Br. 14; FNB Br-s 19.  With

13   respect to the value of the vacant lots, FNB further argues that Mr. Kennedy and Debtor's counsel,

14   Mr. Zlotoff had previously represented that the lots had value.  *Id.* at 17-18.

15          Appellants' many arguments do not address how the Bankruptcy Court erred in its analysis

16   with respect to "the paramount interest of the creditors."  The Bankruptcy Court stated that

17   "unsecured debts in a settlement cannot be a litmus test for approval."  Settlement Order 13; s*ee*

18   *also In re Remsen Partners, Ltd.*, 294 B.R. 557, 567 (Bankr. S.D.N.Y. 2003) (noting that a court

19   should "heavily discount junior creditors' objection to a proposed settlement in such a context, on

20   the basis that they are seeking merely to gamble with the senior creditors' recovery in the

21   unreasonable hope of hitting a litigation jackpot").  The Bankruptcy Court also found that the

22   objections filed by creditors are conclusory or unsupported.  Settlement Order 14-16.  Specifically,

23   the Bankruptcy Court found that the objection filed by Debtor's counsel, Mr. Zlotoff, was not

24   supported by facts, did not take into account the cross-complaints of Nexgen and FNB, and did not

25   consider the problems of proof and trial.  *Id.* at 14-16.  The Bankruptcy Court was also not

26   required to set forth in its order an analysis of every single fact, including how FNB arrived at an

27   amount of $52,679 for its payment, as long as the *In re A & C Properties* "factors as a whole favor

28   approving the settlement."  *In re Pac. Gas & Elec. Co.*, 304 B.R. at 417.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    This Court further notes that Appellants consistently exclude FNB and Nexgen as creditors

2    and their claims at stake in their arguments, which is not the proper standard to evaluate the "the

3    paramount interest of the creditors" under *In re A & C Properties*.  AOB-s 3, 5; Reply-s 5-6; FNB

4    Br-s 18-19; *e.g.*, *In re Spokane Raceway Park, Inc.*, No. BAP EW-07-1210-KMOJ, 2007 WL

5    7540981, at *6 (B.A.P. 9th Cir. Dec. 13, 2007), *aff'd*, 329 F. App'x 86 (9th Cir. 2009) (noting that

6    "the court considered the interests of *all* the creditors") (emphasis added).

###### iii.    *Cases cited by Appellants, such as In re A & C Properties, In re Lion Capital Group, In re Greenacre, In re Remsen, In re Nortel Networks, In re 110 Beaver Street, In re C.R. Stone*

9    Appellants argue that the facts of *In re A & C Properties* are different from this case and

10   the application of *In re A & C Properties* should be limited here.  AOB-s 17-18.  Appellants also

11   cite to various cases in their opening and reply briefs in an attempt to bolster their argument that

12   there was a high probability of success and that settlements were not in the paramount interests of

13   the creditors.  *Id.* at 30; Reply-s 9-12.

14   With respect to *In re A & C Properties*, Appellants point out that unlike the case here, (1)

15   the appellants in *In re A & C Properties* "actively participated" in the negotiation of the

16   compromise; (2) the settlement released two individuals from any personal liabilities; and (3) the

17   creditors were not facing a lawsuit.  784 F.2d at 1379; AOB-s 17-18.  Appellants further contend

18   that the Lawsuit here was litigated on the contingency basis so there would be no "expenses and

19   burdens associate with litigating."  *Id.* at 18; 784 F.2d at 1380.  Lastly, the Appellants argue that

20   the bankruptcy court in *In re A & C Properties* held five days of hearing on the motion for

21   compromise and had over 4,000 pages of record, while the Bankruptcy Court here held one day of

22   hearing and allegedly had a smaller record.  AOB-s 18.

23   The Court finds that the differences in the facts of *In re A & C Properties* do not show that

24   the Bankruptcy Court abused its discretion.  First, the Bankruptcy Court relied on *In re A & C*

25   *Properties* to supply the correct legal rule in evaluating the settlements.  Settlement Order 6-7.

26   Because *In re A & C Properties* provides the correct legal rule, there is no abuse of discretion.

27   Second, the Bankruptcy Court did not base its ruling by analogizing to the specific facts present in

28   *In re A & C Properties*, so Appellants' arguments are not relevant to the Bankruptcy Court's

United States District Court
Northern District of California

1  ultimate ruling.  Lastly, the factual differences do not show how the Bankruptcy Court erred in

2  applying *In re A & C Properties*.  For example, there is no authority mandating that "active

3  participation," release of personal liabilities, a certain length of hearing, or a certain length of the

4  record govern how the *In re A & C Properties* factors must be analyzed.  Accordingly, Appellants

5  fail to point to any abuse of discretion in the Bankruptcy Court's application of *In re A & C

6  Properties*.

7       A detailed review of all other cases cited by Appellants fails to show that the Bankruptcy

8  Court abused its discretion.  As a preliminary matter, the Court notes that many of these cases are

9  bankruptcy court cases of first instance, where the facts were reviewed on a preponderance of

10  evidence standard and credibility findings were made, which this Court does not do on appeal.

11  Moreover, these court cases and out-of-circuit cases may be, at best, persuasive, but they are not

12  precedential.  So the mere reason the courts denied the compromise do not militate a finding that

13  the Bankruptcy Court had abused its discretion here.  Nevertheless, the Court briefly discusses a

14  number of cases cited by Appellants below.

15       The court in *In re Lion Capital Group* found that the "Trustee has advanced not a single

16  substantial reason supported by evidence as to why he may not enjoy a high probability of success

17  with respect to these claims."  49 B.R. 163, 186 (Bankr. S.D.N.Y. 1985).  For this and other

18  reasons, the court denied the motion for settlement.  *Id.* at 190; Hjelmeset Br. 13.  The court in *In

19  re Remsen Partners, Ltd.* also found that the debtor is likely to succeed in the litigation and thus

20  denied the motion for settlement. 294 B.R. 557, 568 (Bankr. S.D.N.Y. 2003); Hjelmeset Br. 13-

21  14; *see also In re 110 Beaver St. P'ship*, 244 B.R. 185, 194-95 (Bankr. D. Mass. 2000) (in denying

22  motion for settlement, finding that the estate would likely prevail on the civil rights claim and that

23  the Trustee failed to account for the values of the other two claims).

24       Here, the Bankruptcy Court credited the Trustee and found that the Lawsuit had a low

25  probability of success based on inadequate discovery and other reasons.  *In re Lion Capital Group*,

26  *In re Remsen Partners*, and *In re 110 Beaver St. P'ship* were not presented with facts relating to

27  inadequate discovery and an unreliable witness, for example.  As such, their application to this

28  case is limited.

1    The court in *In re Greenacre* found that the debtor's trial counsel credible in the

2    assessment of the litigation and concluded that the Trustee did not meet the burden of showing

3    that the settlements should be approved.  103 B.R. 1, 6 (Bankr. D. Me. 1989); Hjelmeset Br. 14;

4    *see also In re C.R. Stone Concrete Contractors, Inc.*, 346 B.R. 32, 49 (Bankr. D. Mass. 2006)

5    (according Trustee little weight and finding that the lawsuit had a reasonable chance to succeed).

6    In contrast, the Bankruptcy Court here did not credit Debtor's litigation counsel and the Trustee

7    made a sufficient showing why the settlements should be approved.  As discussed above, the

8    Court finds no reason to disturb the Bankruptcy Court's factual and credibility findings.

9    Lastly, as to *In re Nortel Networks, Inc.*, the court there granted the settlement motion so it

10   is unclear the exact factual or legal basis upon which Appellants rely.  522 B.R. 491, 518 (Bankr.

11   D. Del. 2014); Reply-s 10.  Nevertheless, the court in *In re Nortel Networks, Inc.* recognized that

12   fairness of the settlement should be evaluated not just for the signatories of the agreement but also

13   "those affected by the agreement" who did not settle.  *Id.* at 512-13.  The court also noted that

14   "[w]hile the Court must give the views of objecting parties-in-interest [] some deference, these

15   views are not dispositive and 'cannot be permitted to predominate over the best interests of the

16   estate as a whole.'"  *Id.* at 513.  The Court finds that the principle articulated in *Nortel* is

17   consistent with what the Bankruptcy Court did here.  The Bankruptcy Court assessed the

18   objections to the settlement, recognized that not all creditors could be paid, and decided that the

19   settlements were still in the best interests of the creditors and estate.

20   Other cases cited by Appellants are not relevant to the facts presented in this case and do

21   not show that the Bankruptcy Court abused its discretion.  *E.g.*, *In re Lahijani*, 325 B.R. 282, 287

22   (B.A.P. 9th Cir. 2005) (evaluating trustee's sales under 11 U.S.C. section 363 and not an order

23   approving a compromise); *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 918 (5th Cir. 1995)

24   (reversing the lower court's approval of settlement because "nearly all creditors in interest

25   opposed this settlement and that the settlement was reached between [a parent company and its

26   wholly owned subsidiary] without the participation of the creditors"); *In re Qmect, Inc.*, 359 B.R.

27   270, 273 (Bankr. N.D. Cal. 2007) (denying approval because of "unanimous opposition to the

28   settlement by creditors at various levels of priority").

United States District Court
Northern District of California

1

2 **V.    ORDER**

3       For the foregoing reasons, the Court AFFIRMS

4       1.   The Bankruptcy Court's order denying a motion for reconsideration of an order

5            converting a Chapter 11 estate to Chapter 7 in Appellate Case No. 16-cv-01066; and

6       2.   The Bankruptcy Court's order granting Trustee's motions to authorize settlements with

7            FNB and Nexgen in Appellate Case No. 16-cv-00856.

8       For the foregoing reasons, the Court DENIES FNB's motion to dismiss Appellants Samuel

9 Goldstein, Chacko Neroth, Pravin Patel, Suraj Puri, and Khatera Said (the "Inactive Creditors")

10 from the appeal in Appellate Case No. 16-cv-01066.  The Court also DENIES FNB's motion

11 seeking clarification regarding Appellants' appendix in Appellate Case No. 16-cv-01066.

12

13 Dated: February 13, 2017

14

15                                        _____
                                         BETH LABSON FREEMAN
16                                        United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28